UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER MCCRAY,

                Petitioner,                Case Number 2:08-CV-15166
                                                             Honorable Denise Page Hood

v.

CINDI CURTIN,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO
PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Christopher McCray's petition for a writ

of habeas corpus, filed under 28 U.S.C. § 2254.  Petitioner was convicted after a jury trial

in the Oakland Circuit Court of second-degree premeditated murder, MICH. COMP. LAWS §

750.317, two counts of assault with intent to commit murder,  MICH. COMP. LAWS § 750.83,

and three counts of commission of a felony with a firearm.  MICH. COMP. LAWS § 750.227b.

As a result of these convictions, Petitioner was sentenced as a third-time habitual felony

offender to concurrent terms of 40-to-60 years for the murder conviction, 30-to-50 years for

the assault convictions, and a consecutive two year terms for the firearm convictions. The

petition raises four claims: (1) the trial court erred in allowing the admission of a telephone

conversation between Petitioner and an inmate imprisoned at the county jail; (2) the trial

court erred in allowing admission of a transcript of the telephone conversation that was

prepared by the prosecutor; (3) Petitioner constructively denied counsel at trial; and (4)

Petitioner was denied the effective assistance of appellate counsel. The Court finds that

Petitioner's first two claims are without merit, and that his remaining claims are barred by

his procedural default. The Court will therefore deny the amended petition and deny Petitioner a certificate of appealability and permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise out of a shooting that occurred near the Lancaster Apartments in Pontiac. Donte Robertson and Julius Standifer drove to the apartment complex in a van to pick up Kentrell Louris. Louris got into the van, and Robertson attempted to park the vehicle at another location within the complex. While Robertson was doing so, defendant and his codefendant, Brandon Arnold, began firing shots at the van. Standifer, who was in the backseat, laid on the floor of the van until the gunshots ceased. He was not harmed. Robertson, however, was struck twice in the knee and fatally struck in the head, and Louris suffered gunshot wounds to the right thigh and neck, rendering him a quadriplegic. Defendant's theory of defense at trial was misidentification, and he presented witnesses who testified that the shooters wore masks.
>
> *      *      *
>
> The evidence tended to show that defendant and co-defendant Arnold together planned and carried out the shooting, which involved 16 shots fired from two AK-47 firearms and one shot from a 9 millimeter handgun. Eight shots were fired from each AK-47. The shots were fired from the rear passenger side of the van toward the front of the van, where Robertson and Louris were seated, and some exited out the driver's side of the van or through the windshield. The evidence also showed that a few days before the shooting, an individual known as "B.A." and later identified as Arnold, approached Nana Acquaah's van and pulled a handgun out of his pocket. Acquaah's van was very similar to Robertson's van. When Arnold saw Acquaah, he asked, "Who are you?," and no shooting occurred at that time. After the shooting at issue, Arnold asked Nacita Gilder to be his alibi witness and tell the police that she was with him during the shooting. Further, Louris repeatedly identified both defendant and Arnold as the shooters, and defendant made incriminating remarks during a telephone conversation with his cousin, Willie Ratcliff, involving washing gunpowder off of his hands,

changing his clothes, and the types of weapons used. Moreover, Roger Stokes saw defendant and Arnold together shortly after the shooting.

*People v. McCray*, No. 271510, 2007 WL 2781011 *1, 2 (Mich. Ct. App. Sept. 25, 2007).

Based on this evidence, Petitioner was convicted of second-degree murder, two counts of assault with intent to commit murder, and three counts of possession of a firearm during the commission of a felony. The trial court sentenced him as a third habitual offender to 40-to-60 years for the second-degree murder conviction, 30-to-50 years for each assault conviction, and a consecutive two years for the firearm convictions.

Petitioner filed a claim of appeal in the Michigan Court of Appeals, in which raised the following claims:

I. Where the evidence of identity and of first-degree murder was insufficient, defendant is entitled to a new trial where the jury was allowed to consider this charge in violation of due process, which substantially decreased defendant's chances of acquittal.

II. Defendant was denied his state and federal due process rights where his convictions were obtained through the use of false and perjured testimony. Defense trial counsel was constitutionally ineffective in failing to object to the prosecutor's use of false and perjured testimony.

III. The trial court violated defendant's rights under the Fifth, Sixth and Fourteenth amendments by increasing his sentences based on facts that were never found by a jury beyond a reasonable doubt.

Petitioner also filed a supplemental pro se brief raising two additional claims:

I. The trial court violated defendant's right to a fair trial under the fourteenth amendment by failing to remove from a taped conversation played to the jury reference to defendant's unrelated criminal activity.

II. The trial court violated defendant's right to a fair trial under the fourteenth amendment by allowing the jury to have a transcript of the taped conversation without verifying it's accuracy.

The Michigan Court of Appeals affirmed McCray's convictions in an unpublished

-3-

opinion. *People v. McCray*, 2007 WL 2781011.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. McCray*, 480 Mich. 1075 (2008) (table).

On December 15, 2008, Petitioner commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court. In March 2009, Petitioner filed a motion to hold his petition in abeyance so he could return to state court to exhaust additional claims by filing a motion for relief from judgment with the state trial court. On July 31, 2009, this Court granted the motion, and Petitioner returned to the trial court on September 15, 2009, filing a motion for relief from judgment pursuant to Mich. Ct. R. 6.501. The trial court denied the motion for relief from judgment, finding that Petitioner had not demonstrated "good cause" or "actual prejudice" for his failure to raise his new claims during his direct appeal under Mich. Ct. R. 6.508(D)(3). *People v. McCray*, No. 05-204586-FC, Opinion and Order (Oakland County Cir. Ct. May 11, 2010).

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, and that Court denied the application for failure to establish entitlement to relief under Mich. Ct. R. 6.508(D). *People v. McCray*, No. 298626, Order (Mich. Ct. App. Dec. 1, 2010). The Michigan Supreme Court subsequently denied relief under the same court rule. *People v. McCray*, 489 Mich. 990 (2011) (table).

On September 12, 2011, Petitioner filed a motion to continue the stay in this Court, alleging that one of his victims had recently died and that he is now being charged with

murder. On December 21, 2011 this Court entered an order denying McCray's request to continue the stay and gave McCray 60 days to file an amended petition. After this Court denied Petitioner's subsequent motion for reconsideration, Petitioner filed his amended habeas petition, raising the four claims set forth above.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal

-6-

justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. Analysis

### A. Claims I and II - Admission of Recorded Telephone Call

Petitioner's first two claims concern the admission at trial of a tape recorded telephone conversation and transcript between Petitioner and Willie Ratcliff, who was an inmate at the Oakland County Jail. In the conversation, Petitioner made incriminating statements about his participation in the shooting. The claims assert that the recording was erroneously admitted at trial for several reasons: (1) the prosecutor prepared a disputed and unauthenticated transcript of the conversation; (2) the conversation contained testimonial statements by Ratcliff in violation of the Confrontation Clause; (3) the prosecutor did not establish an evidentiary foundation for admission of the recording; and (4) a detective erroneously testified as to his interpretation of the slang used during the conversation.

Prior to trial, the prosecution filed a motion to introduce the transcript of the recorded call, and noted that the transcript had been admitted at the preliminary examination after the district judge found it to fairly and accurately depict the contents of the recording. Petitioner's counsel responded that the transcript had been prepared by a clerical staff

member at the prosecutor's office, not a certified reporter. But he did not assert that there were any inaccuracies in the transcription. The trial court noted that the defense had been given an opportunity to listen to the recording and had reviewed the transcript. The court ruled that unless defense counsel could point to any inaccuracies, the transcripts would be admissible at trial.

Defense counsel raised the issue again at the beginning of the trial, arguing that the prosecutor should not be allowed to reference the contents of the recording during opening statement. The trial court ruled that the prosecutor could not use the transcript in opening statement, and agreed to inform the jury that some of the language on the tape was hard to understand, that the jury would hear the tape, and they were to judge for themselves what was said.

During a break in the trial the trial judge listened to the tape, and agreed to allow the prosecutor to distribute transcripts to the jurors to assist them, stating that defense counsel could explore any alleged inaccuracies on cross examination. Defense counsel reiterated his objection to use of the transcript during trial.

Before the tape was played at trial, the court instructed the jury as follows:

> The problem we have is, the language is difficult to interpret. The police department have and through the utilization of Detective Martin - interpreted the language that is necessarily being used. You will have the tape for you and you'll have the opportunity to listen to it at your own leisure. We do have a printed copy of the police interpretation. Now, the prosecution - excuse me - defense counsel disputes the interpretation and they're concerned because it's not a certified court record. The Court has had an opportunity to listen to a portion of the tape and I'm convinced that there has to be some assistance. You will give whatever weight you want to it. But it is not a certified court record and it is the police interpretation of what the individuals are saying. But you will, in your chambers, a copy of this report - excuse me of the extrapolation transcript as well as the tape itself; and you can listen to it yourself.

Tr. V, 869-870.

Detective Martin testified that the police learned that Petitioner and his cousin Willie Ratcliff had a violent history with two of the victims, Robertson and Louris. Ratcliff was in the Oakland County Jail, and so this phone calls were recorded. At 11:48 a.m. on the day after the shooting, Ratcliff called Petitioner and Travis Hudson, and the recording of the call, along with the transcript were presented to the jury. Det. Martin, having interviewed the men, recognized their voices.

Among the incriminating statements, Petitioner told Ratcliff that people were gathering at his crib because they wanted to be with "the mother fuckers who did it." Ratcliff advised Petitioner to wash any gunpowder residue off his hands and to dispose of the clothes he wore, and Petitioner indicated that he would. Petitioner told Ratcliff, "we finna to get gone," which the detective interpreted to mean that they were going to leave and lay low. Ratcliff wrapped up the phone conversation by asking Petitioner about the weapons and ammunition used:

> Ratcliff: Hey, did you have to get a clip for that or got another one.
>
> Petitioner: No. no. We didn't I never did it. but - you know what I'm saying? I didn't know you could just slap the shells in that little cartridge thing.
>
> Ratcliff: Yeah.
>
> Petitioner: I didn't know that.
>
> Hudson: Somebody saw - told me that shit. too. They, like, the nigger jumped out with - they said with like a hundred rounds stuck around his shoulder and shot out there or some shit.
>
> Petitioner: No, no, that was my little nigger. That was my little nigger. He had that god damn 50-barrel; round boys.
>
> Hudson: I think Five was saying that shit. Niggers had - he said niggers had·

niggers had - niggers had bullets strapped around their shoulders and shit.

Ratcliff: So how many pieces was it? Just one, I mean, or two of them or three?

Petitioner: Uh, two AKs and a Nina. You heard?

Ratcliff: Yeah, I heard, So y'all weren't bullshitting?

Petitioner: Ah, no.

Tr. V, 897.

Three of Petitioner's arguments with respect to the telephone conversation do not present cognizable claims. Petitioner asserts that the transcript was not authenticated, that the prosecutor did not lay a sufficient foundation, and that the detective gave opinion testimony regarding the meaning of the slang used.

All of these arguments are based on alleged errors of state evidentiary law, which do not amount to a ground for federal habeas relief. See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only where admission of the disputed evidence rendered the trial "so fundamentally unfair as to deprive the petitioner of due process" does it provide grounds for granting a writ of habeas corpus. *Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006) (quoting *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004)). "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

The Supreme Court has not held that the admission of an improperly authenticated transcript of a telephone call offends a fundamental principle of justice. Petitioner's

-10-

argument regarding the authentication of the transcript concerns only the alleged violation of Michigan Rule of Evidence 901. There is no constitutional dimension to the argument. See *Campbell v. Wolfenbarger*, 2008 U.S. Dist. LEXIS 33367 ( E.D. Mich. Apr. 23, 2008).

The same thing is true regarding the detective's opinion testimony regarding the meaning of the slang. Petitioner argues that the evidence was improperly admitted under Michigan Rule of Evidence 702 and the line of cases under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). However, the Supreme Court strictly engaged in statutory construction in interpreting Rule 702 in *Daubert*. See 509 U.S. at 587. The Court has never indicated that a failure to follow Federal Rule of Evidence 702 or *Daubert* rises to the level of a constitutional violation. As a consequence, Petitioner cannot show that the state court's evidentiary determination was either contrary to or an unreasonable application of established Supreme Court precedent.

Petitioner's claim that the trial court violated his right to a fair trial when it admitted these tape recorded conversations into evidence without a proper foundation for doing so also raises only an error of state law that is also non-cognizable in federal habeas review. See *Graves v. Romanowski*, 2008 U.S. Dist. LEXIS 9648 ( E.D. Mich. Feb. 11, 2008).

The only cognizable argument in Petitioner's first two claims is the assertion that the admission of the recording violated his rights under the Confrontation Clause because Ratcliff's statements constituted testimonial hearsay. Though cognizable, the claim is without merit.

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that certain out-of-court statements are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination, even if the

trial court finds the statements to be otherwise reliable. This rule applies only to out-of-court statements that are "testimonial" in nature. See *Whorton v. Bockting*, 549 U.S. 406, 419-20 (2007). The *Crawford* Court did not define "testimonial," but provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations. *Crawford*, 541 U.S. at 51-52. The Confrontation Clause is not implicated when non-testimonial hearsay is at issue. See *Davis v. Washington*, 547 U.S. 813, 823-26 (2006).

The threshold question here is whether the out-of-court statements were "testimonial." *United States v. Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007). The proper inquiry "is whether the declarant intends to bear testimony against the accused." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). The Court should consider "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Id.* at 675. If a statement is not testimonial in nature, the Confrontation Clause has "no application." *Whorton*, 549 U.S. at 420.

The out-of-court statements challenged by Petitioner are the conversation Petitioner had with Ratcliff over the phone. Certainly, Ratcliff did not intend to bear testimony against Petitioner during the conversation. The statements involved two friends discussing and bragging about a crime. These statements were clearly not testimonial. See, e.g., *Davis*, 547 U.S. at 825 (indicating that "statements from one prisoner to another" are "clearly nontestimonial"). Remarks made to family members or acquaintances are generally considered nontestimonial. *Crawford*, 541 U.S. at 51-52, 56; *Desai v. Booker*, 538 F.3d

-12-

424, 427 (6th Cir. 2008) (casual remarks made to an acquaintance or a friend and not ones made to law enforcement are nontestimonial). Accordingly, Petitioner has not shown how his rights under the Confrontation Clause were implicated by the admission of the tape recorded conversation he has with Ratcliff.

Accordingly, none of the arguments presented in Petitioner's first two habeas claims merit granting habeas relief.

## B. Claims III and IV - Constructive Denial of Counsel

Petitioner's third claim asserts that he was constructively denied counsel by his counsel's failure to subject the prosecutor's case to meaningful adversarial testing. In particular, he claims that his counsel: (1) failed to conduct any investigation; (2) failed to interview of call any defense witnesses; (3) failed to seek expert witnesses; (4) failed to object to hearsay evidence; (5) prevented Petitioner from testifying; and (6) failed to move for a separate trial. Respondent asserts that review of these claims is barred because the state court decision rests on an independent and adequate state procedural ground. His fourth claim asserts that his appellate counsel was ineffective for failing to raise this claim during Petitioner's direct appeal. Respondent asserts that review of the claim is barred by Petitioner's procedural default.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith*

-13-

*v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." Mich. Ct. R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.

-14-

Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id*.

In the present case, the trial court rejected petitioner's motion for relief from judgment, finding that Petitioner had not demonstrated "good cause" for failing to raise this claim during his appeal of right, or "actual prejudice" *People v. McCray*, No. 05-204586-FC, opinion order, page 2 (Oakland Cir. Ct. May 11, 2010). Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's post-conviction claims are clearly procedurally defaulted. *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Petitioner's remaining claims are therefore procedurally defaulted.

Petitioner alleges in his fourth claim ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy. ... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 463 U.S. at 754.

-15-

"[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a Strickland claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a substantial appellate brief which raised three claims. Petitioner has not

-16-

2:08-cv-15166-DPH-RSW Doc # 24 Filed 08/27/13 Pg 17 of 20 Pg ID 2724

shown that appellate counsel's strategy in presenting some claims and not raising other claims was deficient or unreasonable. Petitioner has therefore failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

The Court notes that Petitioner also filed a supplemental pro se brief during his direct appeal. Petitioner took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include the constructive denial of counsel claim. Petitioner has offered this Court no explanation why he failed to raise this claim in his supplemental pro per brief that he filed as part of his direct appeal. Because Petitioner has offered no reasons for his failure to include this claim in his supplemental pro per brief on his direct appeal, he has failed to establish cause to excuse the default. See *Rockwell v. Palmer*, 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008)(habeas petitioner did not show any cause for his failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time).

Because Petitioner has failed to show cause to excuse his default, it is unnecessary to reach the prejudice issue regarding his defaulted claim. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). But even if the Court considered the merits of this issue, it would still deny relief based on the arguments raised by Respondent in its Supplemental Answer. Essentially, the trial court record does not support Petitioner's claim that his trial counsel performed so deficiently so as to constitute

-17-

the constructive denial of counsel. In fact, it appears from the record that counsel vigorously and effectively presented Petitioner's defense at trial but that the weight of evidence offered against Petitioner by the prosecution was too much to overcome.

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has not presented any new reliable evidence that he is innocent of the crimes, as such, a miscarriage of justice will not occur if the Court declined to review petitioner's post-conviction claims on the merits.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are

-18-

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.  The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

**V. Conclusion**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  August 27, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 27, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager